

SECURED LINE OF CREDIT PROMISSORY NOTE

$10,000,000                                                                 Dated: November ___, 2015

FOR VALUE RECEIVED, Bucksport Generation LLC, a Delaware corporation (the "<u>Maker</u>"), having an office at 2 River Road, Bucksport Maine, 04416 does hereby promise to pay to the order of AIM Development (USA) LLC (the "<u>Lender</u>"), at such place as Lender may designate in writing, in lawful money of the United States of America, the principal sum of up to Ten Million Dollars ($10,000,000), or such lesser amount as may be borrowed by the Maker as Advances under this line of credit promissory note (the "<u>Note</u>").

This Note shall bear interest at the rate of one percent (1.00%) per annum unless modified by paragraph 4 of this Note.

The entire outstanding principal amount of this Note shall be due and payable on a date that shall be the earliest to occur of (a) upon demand by the Lender, or (b) March 31, 2016 (such earliest date being referred to as the "<u>Maturity Date</u>").

1. <u>Advances</u>. Subject to the provisions of Section 2 below, the Maker shall have the right, at any time or from time to time prior to the Maturity Date to request loans and advances from the Lender (individually an "<u>Advance</u>" and collectively, the "<u>Advances</u>"). Each such Advance shall be reflected on <u>Schedule A</u> to this Note. The Lender shall determine, in its sole discretion, whether to make any advance requested by Maker and Lender shall not be under any obligation whatsoever to make any advance, or to make any additional advances, under this Note.

2. <u>No Guarantees of Payment</u>. Nothing contained in this Note or any other agreement or instrument shall be deemed or construed to constitute a guaranty or undertaking by any shareholder, officer or director of the Maker or any third person of any of the obligations of the Maker under this Note.

3. <u>Payment on Maturity Date: Prepayments</u>. The entire unpaid Advances under this Note shall be due and payable in full on the Maturity Date. At any time, and from time to time before the Maturity Date, Maker shall have the right to prepay all or any part of the Advances, in whole or in part, without premium or penalty. On the Maturity Date, if this Note has not been paid in full, it shall bear interest from inception at the rate of five percent (5%) per annum until paid in full.

4. <u>Security Agreement</u>.  It shall be a condition to Lender making any Advance that Maker executes a security agreement granting Lender a first priority security interest in the collateral described therein to secure repayment of the Advances; provided, however, that such security interest shall be junior to any valid, enforceable and properly perfected liens held by parties other than Lender.

5. <u>Choice of Law: Venue and Jurisdiction</u>. This Note shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects, including, but not limited to, the legality of the interest charged hereunder, by the statues, laws and decisions of the State of New York. The exclusive venue and/or jurisdiction for any proceeding that may be brought in connection with this Note shall be any federal and state court located in the City of New York and each of the parties hereto irrevocably consents to such venue and/or jurisdiction.

6. <u>Miscellaneous Provisions</u>.

(a) This Note may not be amended or modified, and revision hereto shall not be effective, except by an instrument in writing executed by Maker and Lender.

(b) Any and all notices, demands or requests required or permitted to be given under this Note shall be given in writing and sent, by registered or certified U.S. mail, return receipt requested, by hand, or by overnight courier, addressed to the parties hereto at their addresses set forth above or such addresses as they may from time-to-time designate by written notice, given in accordance with the terms of this Section. A party may change its address for notification purposes by giving the other parties notice in accordance with the terms of this Section 6(b) of the new address and the date upon which it shall become effective.

(c) Maker hereby waives presentment, protest and demand, notice of protest, dishonor and nonpayment of this Note, and expressly agrees that, without in any way affecting the liability of Maker hereunder, Lender may extend the time for payment of any amount due hereunder and release any party liable hereunder without in any other way affecting the liability and obligation of Maker. Maker shall pay all attorneys' fees and other costs of collection actually incurred by Lender in connection with Lender enforcing its rights under this Note to receive payment or otherwise.

(d) Headings at the beginning of each numbered Section of this Note are intended solely for convenience of reference and are not to be deemed or construed to be a part of this Note.

IN WITNESS WHEREOF, Maker has executed this Note effective as of the date first set forth above.

                                              BUCKSPORT GENERATION LLC

                                              By: _____
                                              Its: President

Schedule A

Schedule of Advances

**Date** **Amount**

# SECURITY AGREEMENT

SECURITY AGREEMENT (the "Agreement") made this __th day of November, 2015 by Bucksport Generation LLC, a Delaware limited liability company with a place of business in Bucksport, Maine ("Debtor") in favor of AIM Development (USA) LLC, a Delaware limited liability company with a place of business in 433 N Main Street, Kimberly WI 54136 ("Secured Party").

WITNESSETH:

WHEREAS, Secured Party from time to time be making loans (collectively, the "Loans") to Debtor as evidenced by that certain Secured Line of Credit Promissory Note of even date herewith in the aggregate original principal amount of Ten Million Dollars ($10,000,000) (collectively, the "Note"); and

WHEREAS, in order to induce Secured Party to make the Loans, Debtor has agreed to enter into this Agreement;

NOW, THEREFORE, in consideration of the Loans and for other good and valuable consideration, the receipt and sufficiency of which are hereby conclusively acknowledged by Debtor, Debtor does hereby agree as follows:

1. Definitions. The following terms shall have the meanings set forth below:

"Collateral" means the following properties, assets and rights of Debtor, wherever located, whether now owned or hereafter acquired or arising, and all Proceeds and products thereof: All personal property and Fixtures of every kind and nature, including, without limitation, all Goods (including Inventory, Equipment and any Accessions thereto and further including any software embedded in Goods), Instruments (including Promissory Notes), Documents, Accounts (including Health-Care-Insurance Receivables), Chattel Paper (whether tangible or Electronic Chattel Paper), Deposit Accounts, As-Extracted Collateral, Letter-Of-Credit Rights (whether or not the Letter of Credit is evidenced by a writing), Commercial Tort Claims, all Investment Property, including Securities, Supporting Obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all General Intangibles including, without limitation, all Payment Intangibles, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, Software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, and agreements of any kind or nature pursuant to which Debtor possesses, uses or has authority to possess or use property (whether tangible or intangible) of others or others possess, use or have authority to possess or use property (whether tangible or intangible) of Debtor, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all Software, writings, plans, specifications and schematics; provided, however, that Collateral shall not include any avoidance actions under chapter 5 of the United States Bankruptcy Code, or any proceeds thereof. Any reference to "Collateral" in this Agreement shall be deemed a reference to all of the above-described Collateral, and to any portion or type thereof. Some or all of the Fixtures may be attached to the real property and

improvements thereon located at and near 2 River Road, Bucksport Maine, 04416, of which Debtor is the record owner. Secured Party acknowledges that Debtor only owns 78% of the 7FA gas turbine and Heat Recovery Steam Generator located at such address and that the definition of "Collateral" is only intended to cover Debtor's 78% ownership interest therein.

"Event of Default" means the occurrence of any or all of the following events: (i) Debtor fails to pay any amount when due under this Agreement; or (ii) Debtor fails to observe or perform any other covenant or agreement contained in this Agreement; or (iii) there shall occur an "Event of Default" as such term is defined in any of the Loan Documents, or if such term is not defined in any Loan Document, there shall occur a default in the terms, covenants or conditions contained in such Loan Document, and such default continues after the period, if any, specifically set forth therein for the purpose of curing such default; or (iv) any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor or any other party liable for the Obligations proving to have been false or erroneous when made or furnished; or (v) transfer or disposition of any of the Collateral, except as expressly permitted by this Agreement; or (vi) attachment, execution or levy on any of the Collateral; or (vii) Debtor voluntarily or involuntarily becoming subject to any proceeding under the U.S. Bankruptcy Code or any similar remedy under state statutory or common law; or (viii) Debtor shall fail to comply with, or become subject to any administrative or judicial proceeding under any federal, state or local (a) hazardous waste or environmental law, (b) asset forfeiture or similar law which can result in the forfeiture of property, or (c) other law, where noncompliance may have any significant effect on the Collateral; or (ix) Secured Party shall receive at any time a report with respect to any public filing office indicating that Secured Party's security interest in the Collateral is not prior to all other security interests or other interests reflected in the report.

"Loan Documents" means all documents, instruments or agreements now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note, including this Agreement, as each such document, instrument or agreement may be amended, modified, extended, replaced or supplemented from time to time.

"Obligations" means (i) the indebtedness evidenced by the Note, (ii) any and all other liabilities, advances, loans, sums due or to become due under any indebtedness of Debtor to Secured Party of every kind, nature and description (whether or not evidenced by any Promissory Note or other Instrument, and whether or not for the payment of money), direct or indirect, absolute or contingent, primary or secondary, joint or several, secured or unsecured, due or to become due, now existing or hereafter arising, regardless of how they arise or were acquired, (iii) any liability of Debtor to Secured Party as a guarantor or surety of the indebtedness or liabilities of others, (iv) obligations to pay money, and all interest, fees, charges and reasonable expenses (including reasonable attorneys' and paralegals' fees) paid or incurred by Secured Party at any time in connection with the commitment for, preparation, execution, delivery, amendment, review, perfection, administration and/or enforcement of this Agreement or any of the other Loan Documents, and (v) to the extent not included in the foregoing, all obligations of Debtor to Secured Party pursuant to the Loan Documents, including all obligations to perform acts or refrain from taking action thereunder.

"UCC" means the Maine Uniform Commercial Code, as it may be amended or supplemented from time to time.  All capitalized words and terms used in this Agreement and in any supplement or amendment hereto, other than those specifically defined otherwise in this Agreement, shall have the respective meanings, if any, assigned to them in the UCC; provided however, that the term "Instrument" shall have the meaning assigned it in Article 9 of the UCC, rather than Article 3.

2. Grant of Security Interest.  Debtor grants a security interest in the Collateral to Secured Party to secure the payment and performance of the Obligations.

3. Perfection of Security Interests.

(a) Filing of financing statement.  Debtor authorizes Secured Party to fi1e a financing statement (the "Financing Statement") describing the Collateral or describing any agricultural liens or other statutory liens held by Secured Party.

(b) Possession.  Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Agreement or where Secured Party chooses to perfect its security interest by possession in addition to the filing of a financing statement. Where Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party.

(c) Control.  Debtor will cooperate with Secured Party in obtaining control with respect to Collateral consisting of (i) Investment Property, (ii) Deposit Accounts, (iii) Letter-Of-Credit Rights, and (iv) Electronic Chattel Paper.

(d) Marking of Chattel Paper.  Debtor will not create any Chattel Paper without placing a legend on the Chattel Paper acceptable to Secured Party indicating that Secured Party has a security interest in the Chattel Paper.

4. Post-Closing Covenants and Rights Concerning the Collateral.

(a) Inspection.  The parties to this Agreement may inspect any Collateral in the other party's possession, at any time upon reasonable notice.

(b) Personal Property.  The Collateral shall remain personal property at all times. Debtor shall not affix any of the Collateral to any real property in any manner that would change its nature from that of personal property to real property or to a Fixture.

(c) Secured Party's Collection Rights.  Secured Party shall have the right at any time to enforce Debtor's rights against the Account Debtors and obligors under any Instruments.

(d) Risk of Loss; Insurance.  Debtor has the risk of loss of the Collateral.  Debtor will keep the Collateral insured at all times in such amounts (which must in any event be sufficient to satisfy the co-insurance provisions of the applicable insurance policies), with such coverage and

3

with such companies as Secured Party may from time to time reasonably require. All such policies of insurance shall provide that they may not be canceled without first giving at least thirty (30) days prior written notice of cancellation to Secured Party, and all casualty insurance on Collateral shall name Secured Party as the primary loss payee, and shall provide that Secured Party's interests under such casualty insurance shall not be invalidated or affected in any way by any act or neglect of Debtor or of any other person or entity. Debtor shall deliver a certificate with respect to each policy concurrently with the execution hereof, annually thereafter, and from time to time upon the request of Secured Party, and Debtor shall further deliver to Secured Party, upon Secured Party's request, the complete policies of such insurance. In the event that Debtor fails to provide evidence of the maintenance of such insurance satisfactory to Secured Party, Secured Party may, at its option, secure such insurance and add the cost thereof to the Obligations secured hereby.

(e) <u>No Collection Obligation</u>. Secured Party shall have no duty to collect any income accruing on the Collateral or to preserve any rights relating to the Collateral.

(f) <u>No Disposition of Collateral</u>. Secured Party does not authorize, and Debtor agrees not to (i) make any sales or leases of any of the Collateral, (ii) license any of the Collateral, or (iii) grant any other security interest in any of the Collateral.

(g) <u>Purchase Money Security Interests</u>. To the extent Debtor uses the Loan to purchase Collateral, Debtor's repayment of the Loan shall apply on a "first-in-first-out" basis so that the portion of the Loan used to purchase a particular item of Collateral shall be paid in the chronological order Debtor purchased the Collateral.

5. <u>Representations and Warranties</u>. Debtor represents and warrants that:

(a) <u>Title to and transfer of Collateral</u>. It has rights in or the power to transfer the Collateral and its title to the Collateral is free of all adverse claims, liens, security interests and restrictions on transfer or pledge except as created by this Agreement.

(b) <u>Location of Collateral</u>. All Collateral consisting of Goods is located solely in the State of Maine.

(c) <u>Location, State of Incorporation and Name of Debtor</u>. Debtor's (i) chief executive office is located in the State of Maine; (ii) state of incorporation is the State of Delaware; and (iii) exact legal name is as set forth in the first paragraph of this Agreement.

6. <u>Debtor's Covenants</u>. Until the Obligations are paid in full, Debtor agrees that it will (i) preserve its existence and not, in one transaction or a series of related transactions, merge into or consolidate with any other entity, or sell all or substantially all of its assets, (ii) not change the state of its incorporation, and (iii) not change its name without providing Secured Party with 30 days' prior written notice.

7. <u>Default Costs</u>. Should an Event of Default occur, Debtor will pay to Secured Party all costs reasonably incurred by Secured Party for the purpose of enforcing its rights

hereunder, including (i) costs of foreclosure, (ii) costs of obtaining money damages; and (iii) a reasonable fee for the services of attorneys or paralegals employed by Secured Party for any purpose related to this Agreement or the Obligations, including consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration.

       8.    <u>Remedies Upon Event of Default</u>.

       (a)    <u>General</u>.  Upon occurrence of any Event of Default, Secured Party may pursue any remedy available at law (including those available under the UCC), or in equity to collect, enforce or satisfy any Obligations then owing, whether by acceleration or otherwise.

       (b)    <u>Additional Remedies</u>. Upon occurrence of any Event of Default, Secured Party shall have the right to pursue any of the following remedies separately, successively or simultaneously:

       (i)    File suit and obtain judgment and, in conjunction with any action, Secured Party may seek any ancillary remedies provided by law, including levy of attachment and garnishment.

       (ii)    Take possession of any Collateral if not already in its possession, without demand and without legal process. Upon Secured Party's demand, Debtor will assemble and make the Collateral available to Secured Party as Secured Party directs. Debtor grants to Secured Party the right, for this purpose, to enter into or on any premises where Collateral may be located.

       (iii)    Without taking possession, sell, lease or otherwise dispose of the Collateral at public or private sale in accordance with the UCC.

       9.    <u>Foreclosure Procedures</u>.

       (a)    <u>No Waiver</u>.  No failure to exercise and no delay in exercising, on the part of Secured Party, any right or remedy accruing upon any Event of Default shall: (i) impair any right or remedy, (ii) waive or operate as an acquiescence to any Event of Default, or (iii) affect any subsequent Event of Default of the same or of a different nature.

       (b)    <u>Notices</u>.  Secured Party shall give Debtor such notice of any private or public sale as may be required by the UCC.

       (c)    <u>Condition of Collateral</u>.  Secured Party has no obligation to clean up or otherwise prepare the Collateral for sale.

       (d)    <u>No Obligation to Pursue Others</u>.  Secured Party has no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them, and Secured Party may release, modify or waive any collateral provided by any other person to secure any of the Obligations, all without affecting Secured Party's rights against Debtor.  Debtor waives any right it may have to require Secured Party to pursue any third person for any of the Obligations.

(e)     Compliance With Other Laws.  Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

(f)     Warranties.  Secured Party may sell the Collateral without giving any warranties as to the Collateral.  Secured Party may specifically disclaim any warranties of title or the like.  This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

(g)     Sales on Credit.  If Secured Party sells any of the Collateral upon credit, Debtor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the indebtedness of the purchaser.  In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor shall be credited with the proceeds of the sale.

(h)     Purchases by Secured Party.  In the event Secured Party purchases any of the Collateral being sold, Secured Party may pay for the Collateral by crediting some or all of the Obligations of Debtor.

(i)     No Marshaling.  Secured Party have no obligation to marshal any assets in favor of Debtor, or against or in payment of (i) the Note, (ii) any of the other Obligations, or (iii) any other obligation owed to Secured Party by Debtor or any other person.

10.    Miscellaneous.

(a)     Successors and Assigns; Assignment.  This Agreement shall bind and shall inure to the benefit of the heirs, legatees, executors, administrators, successors and assigns of Secured Party and shall bind all persons who become bound as a debtor to this Agreement.  Secured Party does not consent to any assignment by Debtor except as expressly provided in this Agreement.  Secured Party may assign its rights and interests under this Agreement.  If an assignment is made, Debtor shall render performance under this Agreement to the assignee.  Debtor waives and will not assert against any assignee any claims, defenses or set-offs that Debtor could assert against Secured Party, except defenses that cannot be waived.

(b)     Severability.  If any term or provision of this Agreement or the application thereof to any party or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to parties or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the maximum extent permitted by law.

(c)     Notices.  All notices, consents, approvals, statements, requests, reports, demands, instruments or other communications to be made, given or furnished pursuant to or under this Agreement (each, a "Notice") shall be in writing and shall be deemed given or furnished if

addressed to the party intended to receive the same at the address of such party as set forth below (i) upon receipt when personally delivered at such address, (ii) four (4) business days after the same is deposited in the United States mail as first class registered or certified mail, return receipt requested, postage prepaid, or (iii) one business day after the date of delivery of such Notice to a nationwide, reputable commercial courier service specifying next day delivery:

    (i)     If to Debtor:

            Buckport Generation LLC
            2 River Road
            Bucksport Maine, 04416
            Attn: Walter Griesseier, President

    (ii)    If to Secured Party:

            AIM Development (USA) LLC
            C/O American Iron and Metal
            9100, Henri-Bourassa E.
            Montréal, Québec, H1E 2S4, Canada
            Attn: Kamila Wirpszo, LLB, MBA

Any party may change the address to which any Notice is to be delivered to any other address within the United States of America by furnishing written Notice of such change at least fifteen (15) days prior to the effective date of such change to the other parties in the manner set forth above, but no such Notice of change shall be effective unless and until received by such other parties. Rejection or refusal to accept, or inability to deliver because of changed address or because no Notice of changed address was given, shall be deemed to be receipt of any such Notice. Any Notice to an entity shall be deemed to be given on the date specified in this paragraph, without regard to when such Notice is delivered by the entity to the individual to whose attention it is directed and without regard to the fact that proper delivery may be refused by someone other than the individual to whose attention it is directed. If a Notice is received by an entity, the fact that the individual to whose attention it is directed is no longer at such address or associated with such entity shall not affect the effectiveness of such Notice. Notices may be given on behalf of any party by such party's attorneys.

    (d)    <u>Construction</u>. The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties hereto and are not a part of this Agreement. Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender or the neuter shall be applicable to all genders and the neuter. References to a person or entity are, unless the context otherwise requires, also to its heirs, executors, legal representatives, successors and assigns, as applicable. As used herein, the terms "include," "includes," and "including" shall be deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import. No reference to "proceeds" in this Agreement authorizes any sale, transfer, or other disposition of the Collateral by Debtor. "Or" is not exclusive. "All" includes "any" and "any" includes "all."

(e) <u>Governing Law</u>. This Agreement is being executed and delivered and is intended to be performed in the State of Maine and shall be construed and enforced in accordance with the laws of the State of Maine, except to the extent that the UCC provides for the application of the law of another state.

(f) <u>Merger</u>. This Agreement is the entire agreement of Debtor and Secured Party concerning its subject matter.

(g) <u>No Oral Modification</u>. This Agreement and each and all of the provisions hereof cannot be altered, modified, amended, waived, extended, changed, discharged, or terminated orally or by any act of Debtor or Secured Party, but only by an agreement in writing signed by the party against whom enforcement of any alteration, modification, amendment, waiver, extension, change, discharge or termination is sought. Any party to this Agreement may waive the enforcement of any provision to the extent the provision is for its benefit.

(h) <u>Further Assurances</u>. Debtor will, at its expense, upon the request of Secured Party promptly and duly execute and deliver such documents and assurances and take such actions as may be necessary or desirable in Secured Party's sole discretion in order to correct any defect, error or omission that may at any time be discovered in this Agreement or the documents related hereto, or to carry out more effectively the intent and purpose of this Agreement, or to establish, perfect and protect Secured Party's security interest, rights and remedies created or intended to be created hereunder. Without limiting the generality of the foregoing, Debtor authorizes Secured Party to file, or Debtor will itself file, in all offices and jurisdictions requested by Secured Party, at Debtor's expense, financing and continuation statements pursuant to the UCC or other notices appropriate under applicable federal or state law in form satisfactory to Secured Party.

IN WITNESS WHEREOF, Debtor has caused this Agreement to be duly signed and sealed by Jeff McGlin, its Vice President thereunto duly authorized, as of the date first above written.

WITNESS:

DEBTOR:
BUCKSPORT GENERATION LLC

_____
Name:

By:_____
Name:
Its:

8